United States District Court
Southern District of Texas
ENTERED

MAY 29 2014

David J. Bradley, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CRIMINAL NO. B-13-CR-476-1 |
| | § | |
| JIMMY STANLEY BRIZUELA | § | |

## MEMORANDUM OPINION AND ORDER

This Order sets forth the reasoning why Defendant, Jimmy Stanley Brizuela, was not entitled to a jury instruction for duress. In short, Defendant failed to present sufficient evidence at trial for a reasonable jury to find duress. Additionally, this Order addresses the Defendant's Motion to Correct a Minute Entry. [Doc. No. 90]. This Order grants that motion in part and denies it in part.

### I. FACTUAL BACKGROUND

On May 13, 2014, Defendant was convicted by jury for illegal reentry after being removed. *See* 8 U.S.C. § 1326. At trial, Defendant submitted evidence in support of a duress defense through his testimony, an El Salvadorian police report,[1] and various United States immigration documents reflecting his desire to apply for asylum. The evidence focused on Defendant's fear of bodily harm and death due to his prior membership in the 18th Street gang.[2]

According to Defendant's testimony, he was born in El Salvador and first arrived in the United States around 1970. When Defendant was fifteen and living in Los Angeles, he joined

---

[1] Filed by his cousin's wife.
[2] Defendant testified that the 18th Street gang is the Mara Salvatrucha gang in El Salvador. There is some evidence that Mara Salvatrucha and the 18th Street gang are not only separate gangs, but also violent rivals in El Salvador. *See, e.g.*, Linda Pressly, *El Salvador gang truce: Can MS-13 and 18th Street keep the peace?* BBC NEWS (Nov. 20, 2012, 7:34 PM), http://www.bbc.com/news/magazine-20402216 (reporting the violent conflict in San Salvador between the Mara Salvatrucha gang and the 18th Street gang). Interestingly, the records of the United States Marshall Service, which were not introduced at trial, indicate that Defendant told the jail officials he was a member of "Paisas"—a well-known Mexican Security Threat Group. Regardless, this Court considered only the evidence admitted at trial, which stated that Defendant was a former member of the 18th Street gang.

the 18th Street gang. Defendant testified that he remained in the gang until he was approximately twenty-eight years old, when he left the gang and moved to Houston, Texas. The Parties stipulated that Defendant was convicted of concealing stolen property in 1998. *See* [Doc. No. 72 Ex. 1]. Due to this conviction, Defendant was eventually deported in 2011. As part of that deportation proceeding, he tried unsuccessfully to claim asylum, but his request was denied.

When Defendant returned to San Salvador, El Salvador, he testified that he did not feel safe due to his past history and tattoos. Defendant stated that on April 17, 2013, El Salvadorian gang members attempted to force him into an alley to gather more information about him or possibly kill him. Approximately two weeks later, Defendant decided to return to the United States by bus. He did not consider going to any other country because he was not familiar with other locations and had a general fear of the gangs in Central America. After riding a bus through the entire width of Guatemala and length of Mexico, a journey of almost 1400 miles, Defendant arrived at the United States border. Defendant testified that an individual in Matamoros attempted to force him to cross with drugs. Defendant claimed he resisted, and was instead forced to pay the individual $400 in exchange for the facilitation of an illegal border crossing. Defendant ultimately crossed the river with a bicycle rather than drugs. He floated the bicycle across the river and used it to travel from the river once in the United States. Defendant traveled with a group of three other individuals (at least two others on bicycles), but was eventually apprehended by a border patrol officer.

Defendant stipulated to the following at trial: he was "knowingly present in the United States" on "May 14, 2013"; he was "previously deported or removed from the United States on April 5, 2013"; he "was previously convicted of Concealing Stolen Property . . . on September 15, 1998"; and "on May 14, 2013, [he] had not previously obtained the consent of the Attorney

General of the United States or Secretary of Homeland Security for reapplication for admission into the United States . . . ." *See* [Doc. No. 72 Ex. 1].

## II. DURESS/COERCION INSTRUCTION

### (a) Legal Background

"The duress defense is a common law concept that federal criminal law has incorporated. Under this defense, otherwise criminal behavior may be excused under narrow circumstances." *United States v. Willis*, 38 F.3d 170, 175 (5th Cir. 1994) (citing *United States v. Bailey*, 444 U.S. 394, 409-10 (1980)). As articulated by the Fifth Circuit, the duress defense has four elements:

(1) that the defendant or a member of his family was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious body injury;

(2) that he did not recklessly or negligently place himself in a situation in which it was probable that he would be forced to choose the criminal conduct;

(3) that he had no reasonable legal alternative to violating the law, that is, he had no chance to refuse to do the criminal act and to avoid the threatened harm; and

(4) that there was a direct causal relationship between the criminal action taken and the avoidance of the threatened harm.

*United States v. Montes*, 602 F.3d 381, 389 (5th Cir. 2010) (citing *United States v. Willis*, 38 F.3d 170, 175 (5th Cir.1994)).

The defendant carries the burden to "present evidence of each of the elements of the [duress] defense before it may be presented to the jury." *See United States v. Posada-Rios*, 158 F.3d 832, 873 (5th Cir. 1998). The evidence must be "sufficient for a reasonable jury to rule in favor of the defendant on that theory." *United States v. Stone*, 960 F.2d 426, 432 (5th Cir. 1992)

(citations omitted); *see also United States v. Valentin*, 270 F. App'x 340, 341 (5th Cir. 2008) ("A defendant who seeks an instruction on an affirmative defense such as duress must present sufficient evidence for a reasonable jury to find in the defendant's favor.") (citing *United States v. Stone*, 960 F.2d 426, 432 (5th Cir.1992)).

### (b) Discussion

This Court declined to present the issue of duress and coercion to the jury because the Defendant failed to present sufficient evidence for a reasonable jury to rule in his favor. Even if this Court had accepted all of the Defendant's testimony and evidence as true, the Defense still failed to present sufficient evidence to reach the jury.

### (1) Imminent Harm

Defendant failed to present sufficient evidence of the imminent harm element. It is axiomatic that a generalized fear of harm in the future is insufficient to meet the imminent harm element. *See, e.g., United States v. Bonilla-Siciliano*, 643 F.3d 589, 591 (8th Cir. 2011) ("[Defendant] failed to identify any specific threat to his safety, and relied only on a generalized fear of harm from the [El Salvadorian] government and gang members, he did not make a *prima facie* showing on the first element."); *United States v. Tokash*, 282 F.3d 962, 970 (7th Cir. 2002) (holding that a generalized fear of bodily harm or death due to racial tension in a prison failed to pose a prima facie case for the imminent danger element). A fear of future harm also fails to meet the imminent harm requirement. *United States v. Ramirez-Chavez*, CR 13-00490 DAE, 2013 WL 3581959, at *4 (W.D. Tex. July 2, 2013) (citing *United States v. Lee*, 208 F. App'x 352, 354 (5th Cir. 2006)) (holding that a fear of future harm did not present a prima facie case for the first element of duress). Therefore, Defendant's testimony that he generally feared for his

life in El Salvador and the other Central American countries is insufficient to meet the imminent harm element of duress.

Defendant's testimony regarding the April 17th El Salvadorian gang incident is also insufficient to meet the imminent harm requirement. This is because, according to Defendant's own testimony, he stayed in El Salvador for approximately two weeks after the incident before deciding to illegally reenter the United States. Therefore, this incident was hardly an "imminent" threat to the Defendant. *See United States v. Montes*, 602 F.3d 381, 389 (5th Cir. 2010) (holding that defendant's meeting with his co-conspirators two weeks before a bank robbery failed to meet the "imminent" harm element of duress); *United States v. Ramirez-Chavez*, CR 13-00490 DAE, 2013 WL 3581959, at *3 (W.D. Tex. July 2, 2013) ("[A] duress defense 'only arises if there is a real emergency leaving no time to pursue any legal alternative.'") (quoting *United States v. Posada-Rios*, 158 F.3d 832, 874 (5th Cir. 1998)). Further, Defendant presented no evidence that he was threatened at any time in Guatemala or Mexico during his lengthy trip to Matamoros. He could have stopped anywhere along this trip, which exceeded one-thousand miles.[3]

---

[3] Although Defendant's testimony at trial largely centered around his situation in El Salvador, his testimony regarding the Matamoros incident was also insufficient to permit a jury instruction on duress/coercion for three reasons.

First, the incident was not an imminent, impending threat preceding the illegal reentry. Under Fifth Circuit law, a threat must have begun before the initiation of the illegal activity to satisfy the first element of duress. *See United States v. Morazan-Alvarez*, 535 Fed. App'x. 363, 369 (5th Cir. 2013) (holding that the defendant's fear from the Zetas Cartel affiliate did not arise until after she had begun to illegally transport an alien for financial gain and therefore could not form the basis of any duress defense). Here, Defendant decided to illegally reenter the United States when he was in El Salvador, many days before the Matamoros incident.

Second, the Defendant had a reasonable alternative to avoid committing an illegal act. Defendant's testimony contains no indication of whether he was coerced into crossing after being forced to pay the individual in Matamoros $400. Defendant crossed the border with three other individuals who were also attempting to illegally cross. Defendant did not testify that any of these individuals or anyone else forced him to cross. Furthermore, Defendant was not only never threatened into crossing the border, he also acquired a bicycle and the means to float it across the Rio Grande to facilitate his escape from the Border Patrol once across. Therefore, using his own account, Defendant has not provided sufficient evidence that he had no reasonable alternative to avoid crossing. *See United States v. Johnson*, 416 F.3d 464 (6th Cir. 2005) (holding that the defendant, a bank robber, was not entitled to present his duress defense at trial because he had multiple opportunities to escape from his co-conspirators and

### (2) No Reasonable Alternative

Defendant also failed to present evidence that he had no reasonable alternative to violate the law. Under similar facts, the Eighth Circuit has held that a former gang member with tattoos failed to present prima facie evidence supporting a duress defense to illegal reentry because he did not "exclude the option of going to a country other than the United States or the handful of others that he stated were dangerous." *United States v. Bonilla-Siciliano*, 643 F.3d 589, 591 (8th Cir. 2011). Here, the Defendant spent less than one month in San Salvador before deciding to illegally reenter the United States. He did not attempt to move elsewhere in El Salvador. Then, Defendant traveled for over one-thousand miles through two countries before reaching the United States. He also did not attempt to relocate in any of these countries. The only explanation Defendant offered for this omission was that he was not familiar with the countries and that he feared the gangs in Guatemala and Mexico. He never explained why he did not fear the same gangs here in the United States.

Under Fifth Circuit law, to provide sufficient evidence of 'no reasonable alternative,' defendant must submit evidence "that he had actually tried the alternative or had no time to try it, or that a history of futile attempts revealed the illusionary benefit of the alternative . . . ." *United*

---

avoid robbing the bank). At best, Defendant has only presented evidence that he had no reasonable alternative to paying the individual in Matamoros $400 in order to facilitate his illegal reentry into the United States.

Third, Defendant failed to present sufficient evidence that he did not negligently or recklessly place himself in a situation where it was probable that he would be forced to illegally reenter the United States. Rather, Defendant testified that he traveled with the express purpose of illegally crossing the US/Mexico border. Even if this Court accepted Defendant's account of the Matamoros incident as true, the incident was the probable result of Defendant's decision to illegally reenter the United States. *See United States v. Ramirez-Chavez*, CR 13-00490 DAE, 2013 WL 3581959, at *4 (W.D. Tex. July 2, 2013) (prohibiting a defendant who illegally reentered the US from presenting evidence of duress by smugglers at trial because "[t]he very reason that Defendant traveled from Nicaragua to Piedras Negras and became involved with the smugglers was to commit the crime of illegal reentry into the United States. While Defendant suffered a terrible ordeal upon arriving in Piedras Negras, he negligently placed himself in a dangerous situation by becoming involved with the smugglers for an illegal purpose."). This Court need not address the additional arguments that the Defendant created this very situation by: (1) being affiliated with a criminal organization, (2) committing a crime that caused his deportation, and (3) by trying to reenter the United States illegally. Nor does this Court need to address the fact that all individuals are charged fees to illegally cross the border by the cartels.

*States v. DeLeon*, 12-20441, 2014 WL 1623749, at *4 (5th Cir. Apr. 24, 2014) (quoting *United States v. Posada–Rios,* 158 F.3d 832, 874 (5th Cir. 1998)).[4] In this case, Defendant had weeks since the April 17th incident to try a legal alternative. Since Defendant never attempted to relocate within El Salvador or to another country other than the United States (including the two through which he traveled), he has failed to present sufficient evidence that he lacked a reasonable legal alternative.[5]

### III. MOTION TO CORRECT MINUTE ENTRY

Defendant has filed a motion to correct a minute entry from May 13, 2014 which states "No objection to Jury Charge." While this entry may be technically correct as to the wording of the charge, it may also be unintentionally misleading because it omits the fact that Defendant's counsel did timely object to the Court's ruling regarding duress/coercion and to the Court's decision not to instruct the jury on those issues. Therefore, while this Court denies the motion given that Defendant did not object to the charge as far as what was submitted, the Court herein specifically notes Defendant preserved his complaint that the duress/coercion instruction was not

---

[4] In *DeLeon*, the defendant was convicted for conspiring to possess with the intent to distribute 100 kilograms or more of marijuana, as well as aiding and abetting this possession. *Id.* at *1. The defendant appealed, arguing in part that the district court erred by not submitting his duress defense to the jury. *Id.* at *4. The defendant had helped to unpack the drugs and stored them in his warehouse. The defendant's duress defense posited that, while he intended to call the police after the drugs were stored, he sought to avoid his death and the death of his family by waiting until his family was secure. *Id.* at *4-*5. The Fifth Circuit affirmed the district court's denial, reasoning that the defendant never tried to call the police despite ample opportunities to do so. *Id.*

[5] This conclusion is consistent with *United States v. Ramirez-Chavez*, CR 13-00490 DAE, 2013 WL 3581959 (W.D. Tex. July 2, 2013), which is cited throughout this Memorandum Opinion. *Ramirez-Chavez* was an illegal reentry case where the district court prevented the defendant from presenting evidence of duress at trial because the defendant failed to present sufficient evidence of the elements. *Id.* at *1. Defendant paid smugglers so he could illegally reenter the United States. *Id.* at *1. During the operation, the defendant was extorted: the smugglers demanded several thousand dollars more in payment and violently beat the defendant in attempt to collect. The defendant escaped his captors, hailed a taxi, and fled across the border. The district court prohibited defendant from presenting evidence of duress at trial. It reasoned that the defendant failed to establish a lack of reasonable legal alternatives because "once Defendant reached the taxi, several reasonable legal alternatives lay before him because the taxi driver could have taken him anywhere . . . ." *Id.* at *5. It also reasoned that the defendant did not satisfy the imminent threat element because, once he escaped his captors, the defendant was no longer under a threat. *Id.* at *4 (citing *United States v. Lee,* 208 F. App'x 352, 354 (5th Cir. 2006)).

presented to the jury. Counsel made the appropriate objections in a timely fashion, and this Court overruled them.

## IV. CONCLUSION

Defendant's situation, while arguably difficult, was not one contemplated by the duress defense. Under the evidence presented at trial, Defendant was not facing immediate harm that forced him to illegally reenter the United States. Rather, he faced a generalized threat of harm which could reasonably be avoided by relocating within El Salvador or to countries other than the United States. Therefore, for the reasons discussed, Defendant was denied a jury instruction on duress/coercion, but he properly preserved his complaint about this denial for appeal.

Signed, this 29th day of May, 2014.

Andrew S. Hanen
United States District Judge